IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:17-CR-41-PLR-CCS |
| | ) | |
| ROBERT L. ROSE, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Judge as may be appropriate. Defendant Rose asks [Doc. 66] the Court to suppress all evidence stemming from the March 7, 2016 search of his apartment, arguing that the officers conducted the search prior to the issuance of a search warrant in violation of the Fourth Amendment. The parties appeared before the undersigned on June 29, 2017, for an evidentiary hearing on the motion. Assistant United States Attorney Caryn L. Hebets and Intern Brittany Sims appeared on behalf of the Government. Attorney Michael B. Menefee represented the Defendant, who was also present. The Court heard the evidence and the arguments of the parties. For the reasons stated more fully herein, the Court finds that officers did not search the Defendant's apartment until Detective Kenneth Allen arrived with the signed search warrant. Accordingly, the Court recommends that the Defendant's Motion to Suppress Evidence be denied.

# I. POSITIONS OF THE PARTIES

The Defendant is charged [Doc. 3] with conspiring with nine named codefendants and others to distribute fifty grams or more of methamphetamine between January 1, 2014, and April 18, 2017 (Count One).  The Defendant is also alleged to have possessed methamphetamine with the intent to distribute on March 7, 2016 (Count Seven), and with possessing a firearm in furtherance of the March 7, 2016 drug trafficking crime (Count Eight).  Law enforcement officers encountered Defendant Rose in the parking lot of his apartment complex at 8:58 p.m., on March 7, 2017.  The officers detained the Defendant in the parking lot and conducted a protective sweep of the Defendant's apartment to remove the occupants and secure the premises. Neither party disputes that Knox County Magistrate Judge Ray Jenkins signed a search warrant for the Defendant's apartment at 9:40 p.m. on March 7, 2017.  The Defendant argues [Docs. 66 & 67] that the officers searched his apartment prior to 9:40 p.m., making the search warrantless.  The Government contends [Doc. 83] that the search occurred after the search warrant was signed and transported to the apartments.

# II. SUMMARY OF TESTIMONY

At the June 29 hearing, the Government presented the testimony of Lieutenant Lawrence Christopher Bryant and Detective Kenneth Allen.

Lieutenant Bryant testified that he has worked for the Knox County Sheriff's Office ("KCSO") for sixteen years and that he currently supervises the Narcotics Unit.  He said that he is typically involved in several searches per week.  Lieutenant Bryant said that on March 7, 2016, an informant made a controlled drug buy at the Defendant's apartment from an individual other than the Defendant.  He said that law enforcement officers arrived at the Defendant's apartment

2

complex at 8:58 p.m., on March 7, 2016. He said this time was certified by the dispatcher. Lieutenant Bryant said that the officers encountered the Defendant in the parking lot and that the Defendant declined to give consent to search his apartment. Lieutenant Bryant said that the officers secured the Defendant's apartment. He testified that a warrant to search the Defendant's apartment was brought to the scene shortly after 9:40 p.m. He said the search of the Defendant's apartment began after the search warrant arrived on the scene and the officers found methamphetamine, marijuana, weapons, drug packaging materials, and scales in the apartment. According to Lieutenant Bryant, the officers arrested the Defendant after the search.

Lieutenant Bryant stated that the case agent on a case is required to make a case file. He said that he did not do any of the paperwork in this case but that he approved the Incident Report, without noticing the difference[1] between the time of the search stated on the Incident Report and the time that the search warrant states it was issued. Lieutenant Bryant said the time of 3:30 p.m. on the evidence log was the time that the guns seized in this case were turned over to the Tennessee Bureau of Investigation ("TBI"). He stated that neither he, nor any officer on the scene, began searching the Defendant's apartment before the search warrant arrived on the scene.

On cross-examination, Lieutenant Bryant testified that he had served on the Federal Bureau of Investigation ("FBI") Drug Task Force for three years and that he is trained to perform searches and seizures. He described the procedure for obtaining a search warrant as follows: First, he would obtain information about the case. Second, he would create an affidavit showing

---

[1] The Court notes that Lieutenant Bryant provided this testimony about a discrepancy before either the Search Warrant [Exh. 1] or the Incident Report [Exh. 8] were placed into evidence. The narrative in the Incident Report states that officers executed the search warrant at approximately 2058 hours (8:58 p.m.), on March 7, 2016. The search warrant states that it was signed at 9:40 p.m., on March 7, 2016.

3

probable cause to issue a search warrant. Third, he presented the affidavit to a judicial officer. Fourth, the judicial officer would sign the search warrant, if he or she agreed that the affidavit provided probable cause to search. Then, the executing officer would take the original, signed search warrant and a copy of the search warrant to the scene. Following the search, the original search warrant would be returned to the judge. The copy of the search warrant would be left with the individual whose property was searched or left at the property.

Lieutenant Bryant stated that Detective Kenny Allen, the affiant seeking the instant search warrant, executed the search warrant for Defendant Rose's apartment. Lieutenant Bryant described the execution of a search warrant as follows: He said that normally, the executing officer waited until he or she had the search warrant before knocking on the door of the property to be searched and announcing law enforcement's presence. The executing officer would hand a copy of the search warrant to the occupant at the door. The executing officers would then enter the residence and detain and remove anyone present for security reasons. The inventory clerk would create a log of the items seized and would note the date and time on the inventory. Before the officers left, they would give the occupant a receipt for the items seized. The executing officer would then return the original search warrant, with the exact time of the execution of the warrant noted thereon, to the issuing judge. Lieutenant Bryant said that Detective Allen also returned the search warrant in this case.

Lieutenant Bryant stated that even though he wears a watch and carries a cellular telephone with a clock on it, he uses the time assigned by the dispatcher as their official time of arrival on the scene. He acknowledged that many people, such as TBI agents, Assistant United States Attorneys, and the grand jury, rely on the paperwork in the case file. He agreed that in most cases, the records in the case file were at least as reliable as his memory.

4

Lieutenant Bryant identified the Knox County search warrant [Exh. 1] issued for the search of Defendant Rose's apartment. The search warrant reveals that it was issued at 9:40 p.m., on March 7, 2016, by Knox County General Sessions Court Magistrate Ray Jenkins. Lieutenant Bryant also identified a KCSO Property Receipt [Exh. 2] for property confiscated from Robert Rose on March 7, 2016, at "3:30 HRS." The property receipt is for four handguns and states that the property was released to the TBI on August 2, 2016. Lieutenant Bryant testified with regard to a second KCSO Property Receipt [Exh. 3] for property confiscated from Defendant Rose on March 7, 2017, at "2058 HRS," which Lieutenant Bryant said is 8:58 p.m. This receipt, which was filled out by Detective Gardner, lists numerous items seized from the Defendant's apartment, including drug paraphernalia, scales, a safe, suspected controlled substances, money, and the four handguns listed in Exhibit 2. Lieutenant Bryant identified a third KCSO Property Receipt [Exh. 4], listing five items seized from Defendant Rose and giving a report date of March 7, 2016, at "2058 HRS."[2]

Lieutenant Bryant testified that the KCSO Vehicle Pull-In/Inventory Form [Exh. 5] for Defendant Rose's Austin Mini Cooper is dated March 7, 2016, at "2058 HRS" and was completed by Detective Adam Mitchell. Lieutenant Bryant agreed that the date and time on the Vehicle Pull-In/Inventory Form is the date and time that the vehicle was seized. He next identified a Case Report [Exh. 6], which is used to record notes about a case and which would have been completed after the search. The Case Report contains a narrative by Detective Kenny Allen, which

---

[2] The Court notes that the second page of Exhibit 4 is a photograph of an evidence envelope for five items recovered from Defendant Rose's apartment on March 7, 2016, at "2058." The Court finds that this photograph is erroneously attached to the Exhibit 4 property receipt, because the evidence envelope states that it contains controlled substances, while the property receipt is for a web camera, a dash camera, two baggies, a checkbook, and a debit card.

5

states that "[o]n 03/07/2016 at approximately 2058 hours Officers with the Knox County Narcotics Unit executed a search warrant at" the Defendant's apartment and made contact with the Defendant. He agreed that the Case Report does not list the prior controlled buy at the apartment and the narrative does not mention the officers meeting the Defendant in the parking lot, the officers clearing and securing the apartment, or the delay in searching the apartment. Lieutenant Bryant stated that the Case Report lists himself, Sergeant Brown, and Officers Yearout, Gardner, and Neely as the officers on the scene.

Lieutenant Bryant testified that KCSO Arrest Report [Exh. 7] in this case states that Defendant Rose was arrested on March 7, 2016, at 2058 hours. Lieutenant Bryant said that this was not when the Defendant was arrested and that the Arrest Report is not reliable as to the time of the Defendant's arrest. The narrative in the Arrest Report states that the Knox County Narcotics Unit executed a search warrant at the Defendant's apartment "[o]n 03/07/2016 at approximately 2058 hours[.]" This same narrative appears in the KCSO Incident Report [Exh. 8], which also lists five offenses, all alleged to have begun and ended on March 7, 2016, at 2058 hours. Lieutenant Bryant testified that 2058 hours is the time that officers arrived on the scene on March 7, 2016. He said that all of the forms about which he had testified so far are reliable, except that the "weapons sheet" [Exh. 2] and the property receipt [Exh. 3] did not correctly state the time the property was seized.

Lieutenant Bryant identified Exhibit 9 as the cover sheet for the return on the execution of the search warrant in this case. The cover sheet is signed by Magistrate Jenkins and Detective Allen and bears the date of March 7, 2016, at 8:58 p.m. Lieutenant Bryant again stated that this is the time certified by the dispatcher of the officers' arrival on the scene. He said the property receipts were attached to this cover sheet. Lieutenant Bryant stated that Exhibit 10 is a

6

photograph of the evidence envelope for the controlled substances seized from Defendant Rose's apartment.[3] He said that this envelope states the date and time the evidence was recovered as March 7, 2016, at 2058 hours. He said the photograph depicts the evidence envelope attached to a box of crystal methamphetamine. Lieutenant Bryant stated that Exhibits 1 through 10 constituted all of the documents in this case, that no other documents exist that state when the search occurred, and that all of these documents are reliable.

Lieutenant Bryant reiterated that upon their arrival on the scene, the officers met Defendant Rose in the parking lot. The officers asked Defendant Rose for consent to search his apartment, but Defendant Rose denied consent. Lieutenant Bryant said that after searching the apartment, the officers left a copy of the search warrant and the inventory of the items seized in the apartment, because no one was at the apartment to receive the copies. He said that although Defendant Rose was still in the parking lot when the search warrant arrived, no one handed him a copy of the search warrant and he was transported to the detention facility before the officers concluded the search.

On redirect examination, Lieutenant Bryant testified that upon their arrival on the scene, officers were informed that there were people inside the Defendant's apartment. He said that the officers then secured the apartment in order to avoid the destruction of evidence, but the officers did not begin the search. He stated that he did not fill out any of the paperwork in this case. He said that on the property receipt forms, the Report Date is the date of the incident and the Current Date is the date the form is filled out. Lieutenant Bryant said that Exhibit 2 erroneously lists the time the form was completed (3:30) as the time that the items were seized. Lieutenant

---

[3] The Court notes that Exhibit 10 appears to be a color copy of the same photograph attached to Exhibit 4.

Bryant said that 8:58 p.m. was the time given by the dispatcher for the officers' arrival at the Defendant's apartment complex on March 7, 2017. He believed that the officers filling out the forms in this case had used this time to document everything that occurred. Lieutenant Bryant said that neither he, nor any officer, commenced the search of the Defendant's apartment before the search warrant was brought to the scene.

On re-cross examination, Lieutenant Bryant stated that he could not recall the exact time that the officers began searching the Defendant's apartment, although it was after the search warrant arrived on the scene. He said he would have to pull a case file in order to tell the next search in which he was involved after this one, because he could not recall it. With regard to Exhibit 2, Lieutenant Bryant stated that he was fairly certain that Lieutenant David Amburn filled out the property receipt improperly by placing the time in the wrong location on the form. He agreed that the time appeared in the correct place on the rest of the forms.

In response to questions from the Court, Lieutenant Bryant said the time of 3:30 on Exhibit 2 was the time the form was completed, not the time the item was seized. He said the photographs of the TBI evidence labels, which are attached to Exhibit 2, state that the TBI recovered the evidence on August 10, not August 2, and give a time of 3:30 p.m. Lieutenant Bryant said he could not explain this discrepancy. He stated that Exhibit 2 also contains four TBI Evidence Room Receipt Logs dated August 3, 2016, and bearing times of 11:09 to 11:18 a.m. He agreed that August 3 was the day after the evidence was released to the TBI, as noted on the first page of Exhibit 2, but he said he could not explain this discrepancy. Lieutenant Bryant said that Detective Kenny Allen was the affiant for the search warrant and also wrote the narratives in this case.

Detective Kenneth Allen testified that he is currently a detective in the Major Crimes Unit of the Knoxville Police Department but that in March 2016, he worked on the Knox County Narcotics Unit, in which he applied for a search warrant several times each month. He stated that in order to obtain a search warrant, he would provide information on surveillance, from confidential informants, and from controlled buys to the County Attorney. The County Attorney would then draft an affidavit, which Detective Allen reviewed for accuracy. He would then present the affidavit to a judge.

Detective Allen stated that on March 7, 2016, a confidential informant made a controlled buy of drugs from Defendant Rose. Detective Allen said that he was present on the scene of the Defendant's apartment complex on Papermill Road with other officers. He said the officers secured the scene and that he left the scene to get a search warrant. Detective Allen stated that he went to the Magistrate's office in the City County Building to obtain the search warrant. He said the Magistrate signed the search warrant at 9:40 p.m. Detective Allen said it took him twenty-five minutes to drive back to Defendant Rose's apartment with the search warrant. He said that no one had searched the apartment prior to his arrival and that the search began after he took the search warrant into the apartment. He said he left a copy of the search warrant at the apartment.

Detective Allen stated that he filled out the Arrest Report and the Incident Report in this case. He said that he put the time of 2058 on the paperwork. He stated that this was the time, as confirmed by the dispatcher, that the officers went to Defendant Rose's apartment. He said that he used the dispatch time for all the documents and that he did not pay attention to the time discrepancy at the time he filled out the paperwork in this case. With regard to the cover sheet for the return of the search warrant [Exh. 9], Detective Allen said that the Magistrate signed the cover sheet at 9:40 p.m., at the same time that he signed the search warrant, and despite the

Magistrate signing the cover sheet at the same time as he issued the search warrant, he (Allen) put down the return time as 8:58 p.m. However, Detective Allen emphatically stated that no one began searching the Defendant's apartment until he arrived with the signed search warrant.

On cross-examination, Detective Allen stated that he began working for the KCSO in 2004. He said he worked in the jail until 2007, when he received his police officer certification, and then he worked for seven years with the Narcotics Unit. Before coming to the KCSO, Detective Allen had performed police work in New Mexico and had worked for a printing company in Dandridge, Tennessee. He said that he had received training on how to obtain and execute a search warrant.

Detective Allen said he arrived at the Defendant's apartment complex at 8:58 p.m., on March 7, 2016. He said he was there for five to ten minutes, and then he went to the City County Building. He said he called the County Attorney en route, told him the information on Defendant Rose, and asked him to begin preparing the affidavit. Detective Allen said it took him less than twenty minutes to get to the City County Building and that he parked underneath the building. He then went to the County Attorney's office and waited for the County Attorney to finish the affidavit. He said that the information from Officers Jeffrey Neeley, Brad Yearout, and Brian Mitchell was all specific to this case and was not cut and pasted into the affidavit. Detective Allen stated that although the affidavit contains some form language that could have been taken from prior affidavits, it contains four pages of single-spaced information that is specific to this affidavit. He estimated that it took less than one hour to prepare the affidavit. He said he took the affidavit to the Judicial Commissioner's office, which is also in the City County Building. Magistrate Ray Jenkins took about ten minutes to read the affidavit and then signed the search warrant at 9:40 p.m.

10

Detective Allen said that the search did not commence until he got back to the Defendant's apartment with the search warrant, which was around 10:00 p.m. He said that to his knowledge, no one had entered the apartment before he arrived. He said no one was in the apartment when he entered and that he was the first one through the door. Detective Allen said that he did not draw his gun when he entered the apartment, because it had already been secured and three or four people removed from the apartment. Detective Allen said that no officers were in the apartment while he was away from the scene getting the search warrant.

Detective Allen said the inventory of the items seized in the execution of the search warrant was completed while the officers were in the Defendant's apartment. He said he did not give Defendant Rose a copy of the search warrant because Rose was taken to the hospital when he complained of chest pains at the scene. Detective Allen said that if another officer stated that the Defendant was still at the scene when Allen returned with the search warrant, that officer was wrong.

Detective Allen testified that Exhibits 1 through 10 were reliable, except for the time. He said that the KCSO policy is to put down the time of the event on the forms, but he made a mistake and wrote the time from the dispatcher. He said after the search, when he was back at his office, he wrote the narrative and put 8:58 p.m. on all of the documents. He said the time of 8:58 p.m. is a mistake. He stated that the paperwork is not necessarily more reliable than his memory of the events. Detective Allen testified that all of the documents in this case have been made exhibits.

On redirect examination, Detective Allen stated that although he was estimating the time it took to prepare the search warrant and affidavit, he knew for certain that the Magistrate signed the search warrant at 9:40 p.m. He said the Defendant's apartment was secured around

11

8:58 p.m. He agreed that it was not possible for him to sign the search warrant return cover sheet [Exh. 9] at 8:58 p.m., when the magistrate signed the search warrant [Exh. 1] at 9:40 p.m. On re-cross examination, Detective Allen agreed that he was certain that Magistrate Jenkins signed the search warrant at 9:40 p.m., because that was the time Magistrate Jenkins wrote on the document.

Pursuant to questions by the Court, Detective Allen stated that page six of the affidavit [Exh. 1] states "[w]ithin the last twenty-four (24) hours of March 7, 2016, at 11:00 p.m.," a confidential informant made a controlled buy of crystal methamphetamine from Defendant Rose. Detective Allen said he did not know why the affidavit said 11:00 p.m. He stated that he did not think it was suppose to be 11:00 a.m. He said that Detective Gardner filled out most of the property reports in this case. He said that the Magistrate had already signed the cover sheet for the return on the search warrant at the time that the Magistrate gave it to him. He said that he normally enters the date and time that the warrant is served on the cover sheet for the return; however, in this case, he put the time given by the dispatcher. He said the time on the cover sheet for the return in this case is wrong. Detective Allen said the Clerk's Office documents the time that the return for a search warrant is signed and keeps the return in their files. He said that in the normal case, the time on the return indicates the time he conducted the search.

### III.  FINDINGS OF FACT

Based upon the testimony and exhibits presented in this case, the Court makes the following findings of fact:

At 8:58 p.m., on March 7, 2016, officers from the Knox County Sheriff's Office arrived at the apartment complex where Robert Rose lived. The officers encountered Rose in the parking lot, detained him, and asked for consent to search his apartment. When Rose refused to give

consent, the officers secured the apartment, removing several occupants, and then Detective Kenneth Allen left to seek a search warrant. En route to the City County Building, Detective Allen called the County Attorney and gave him the information to put in the affidavit. Detective Allen arrived at the City County Building and waited for the County Attorney to finish preparing the affidavit and search warrant. Allen then took the documents to Magistrate Ray Jenkins, whose office was on another floor of the City County Building. Magistrate Jenkins read the documents and then signed the search warrant at 9:40 p.m.

Approximately twenty minutes later, Detective Allen returned to the apartment complex with the search warrant and led the search of Rose's apartment. The officers did not begin searching the apartment until Detective Allen returned with the search warrant. Detective Gardner filled out the property receipt [Exh. 3] for the inventory of the property seized from the apartment.[4] Detective Allen left a copy of the search warrant at the apartment, because Rose had been removed from the scene by the time the search concluded.

Following the search, Detective Allen completed a Case Report [Exh. 6], an Arrest Report [Exh. 7], and an Incident Report [Exh. 8] for the case. In all of these documents and on the cover sheet for the return on the search warrant [Exh. 9], Detective Allen erroneously entered 8:58 p.m. (or 2058 hours), the time that the officers arrived on the scene, as the time of the execution of the search warrant. The Court finds that this erroneous time was later recorded on an evidence envelope [Exh. 10] for evidence going to the TBI.

---

[4]The inventory states March 7, 2016, at 8:58 p.m. for the "REPORT DATE" but only gives March 7, 2016, and leaves the time blank for the current time, i.e. the time the inventory was prepared. The Vehicle Inventory Form [Doc. 5] prepared by Detective Mitchell also gives a *report* date and time of March 7, 2016, at 2058 hours.

## IV. ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. Defendant Rose asks the Court to suppress all evidence seized in the March 7, 2016 search of his apartment. He argues that law enforcement seized this evidence in violation of his Fourth Amendment right to be free of warrantless searches, because KCSO documents reveal that the officers searched his apartment before the search warrant was signed and brought to his apartment complex. The Government argues that the Defendant's apartment was searched following the delivery of a valid search warrant and that mistakes in the paperwork regarding the time of the search are an unfortunate clerical inaccuracy that does not affect the admissibility of the evidence seized.

The Court agrees with the Government that the instant case presents an issue of fact, rather than an issue of law. "The Fourth Amendment generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). The Government does not dispute that if the officers had searched the Defendant's apartment prior to the arrival of the search warrant on the scene, it would have been a warrantless search. The Government also agrees [Doc. 83, p.2] with the Defendant that no exigent circumstances existed to justify a warrantless search and that the Defendant did not consent to the search. Additionally, both parties agree that Magistrate Jenkins signed the search warrant for the Defendant's apartment at 9:40 p.m. Accordingly, the only question for the undersigned to determine is whether the search of the Defendant's apartment on March 7, 2016, occurred before 9:40 p.m. or after.

At the June 29 hearing, Mr. Menefee argued that the fact that all of the documents in the case state that the search occurred at 8:58 p.m. and the fact that these documents were filled out by different officers prove that the search occurred before the Magistrate signed the search warrant. He asserted that both officers agreed that the paperwork in this case is as reliable as their memories of the events that occurred over fifteen months ago. Accordingly, he contends that the Court should credit the time on the records over the testimony of the officers.

Ms. Sims argued that Detective Allen put the wrong time on the paperwork and the other officers filled out paperwork based on Detective Allen's reports. She contends that the Court should credit the officers' testimony about the events of March 7, 2016, and find that the search was proper.

The Court finds that both Lieutenant Bryant and Detective Allen testified that law enforcement arrived at the Defendant's apartment complex at 8:58 p.m., on March 7, 2016. Lieutenant Bryant testified that the officers encountered Rose in the parking lot of the apartments and that Rose refused consent to search his apartment. Both testified that officers secured the Defendant's apartment, requiring the occupants to step out. Both also testified, that Detective Allen left the apartment complex to seek a search warrant and that the Magistrate signed the search warrant at 9:40 p.m. Both witnesses testified that Detective Allen returned with the search warrant a short time after it was signed. Both stated that none of the officers present searched the Defendant's apartment until Detective Allen returned with the signed search warrant. Although the witnesses disagreed about whether the Defendant was transported from the apartment complex before or after Detective Allen arrived with the search warrant, both testified that Detective Allen left a copy of the search warrant in the empty apartment because the Defendant was no longer on

the scene. Both Lieutenant Bryant and Detective Allen testified that the Defendant's apartment was not searched at 8:58 p.m. and that this was the time the officers first arrived at the apartment complex.

In contrast, Detective Allen began the narrative of the events of the evening of March 7, 2016, in the Case Report as follows: "On 03/07/2016[,] at approximately 2058 hours[,] Officers with the Knox County Narcotics Unit executed a search warrant at [the Defendant's address]. Officers made contact with a white male identified as Robert Lee Rose." The narrative then describes the search of the Defendant's apartment and the items seized. Although this narrative does not mention the Defendant's refusal of consent or the officers' securing the apartment and waiting on the search warrant, it directly conflicts with the testimony of Lieutenant Bryant and Detective Allen only in the time of the execution of the search warrant. Detective Allen testified that he entered the wrong time for the execution of the search warrant on four documents, the Case Report, the Arrest Report, the Incident Report, and the search warrant return.

The Court finds that a close examination of the exhibits presented at the June 29 hearing supports Detective Allen's testimony that he entered the wrong time on the paperwork in this case. First, the Court finds that Exhibit 3, the property receipt or inventory filled out by Detective Gardner,[5] states the *report* date and time as March 7, 2016, at 2058 hours, and the current date as

---

[5] The Court finds that Exhibit 2, a property receipt for four handguns, was filled out on August 2, 2016. Exhibit 2 documents the transfer of the four handguns from the KCSO to the TBI. Exhibit 4, the property receipt for a web camera, a dash camera, 2 baggies, a checkbook, and a debit card, indicates that it was completed on March 17, 2016, but the current time is illegible. Also, according to the document, Detective Allen seized these items, and it is not clear who filled this document out. The attached evidence envelope is for controlled substances and not the items on this property receipt.

March 7, 2016, with no current time entered. This property receipt, which was filled out during the search, supports the testimony that the officers first reported to the apartment complex at 8:58 p.m., the "report time," but does not give this as the search time.

The Court finds that documents filled out after the search suggest that the times thereon may have been taken from Detective Allen's reports. The Vehicle Pull-In/Inventory Form [Exh. 5], which documents the seizure of the Defendant's vehicle, bears the same Event Number as the ARR Number in the Arrest Report and the Report Number in the Incident Report. The Court finds this suggests that Detective Mitchell, who filled out the Vehicle Pull-In/Inventory Form, could have relied on the time that Detective Allen wrote in the Arrest and Incident Reports. Also, the evidence envelope [Exh. 10] for the drugs gives the date and time of their recovery as March 7, 2016, at 2058, but there is no evidence as to who completed the information on this envelope. It lists "K. Allen" as the person, who recovered the evidence, so Detective Allen could have filled in this time incorrectly as well.

Finally, the Court finds that the attachments to the search warrant [Exh. 1] support Detective Allen's testimony that the County Attorney began preparing the search warrant before Detective Allen arrived at the City County Building. The attachments, which are maps of the apartment complex and surrounding area, bear a caption that they were printed from the KUB Geographic Information System on March 7, 2016, at 3:41:53 p.m. through 3:45:04 p.m. and 8:37:51 p.m. Although neither party referenced these times at the motion hearing, the Court finds that this information appears to confirm that the County Attorney may have been gathering information for the search warrant and affidavit throughout the day on March 7, 2016, and makes

Detective Allen's timeline for finishing the affidavit and search warrant documents more feasible.[6] The Court finds that these documents corroborate Detective Allen's testimony.

In this case, the Court finds that the record keeping, particularly the documentation of the dates and times of events, by the KCSO was sloppy at best and abysmal at worst. However, despite this deficiency in record keeping, the testimony indicates the officers searched pursuant to a valid search warrant that was validly executed. The Court finds Detective Allen's and Lieutenant Bryant's testimony regarding the events of the evening of March 7, 2016, to be consistent and plausible. The Court also finds that the Defendant offered no evidence to rebut the validity of the search warrant or the propriety of its execution. The Defendant presented no testimony or evidence (aside from the dates and times on paperwork completed following the search) that the search occurred at any specific time or that it occurred before the issuance of the search warrant. The undersigned finds the testimony that law enforcement did not search the Defendant's apartment before the search warrant was brought to the scene to be credible. Accordingly, the Court finds that the Defendant's apartment was searched pursuant to a valid search warrant and finds no basis to suppress the evidence seized. The problem in this case lies with the record keeping, not with

---

[6] At the motion hearing, defense counsel suggested that Detective Allen's timeline of leaving the apartment complex, traveling twenty minutes to the City County building, completing an affidavit that has four single-spaced pages of information specific to this case, presenting the search warrant and affidavit to the Magistrate in a separate office, and waiting while the Magistrate read and signed the search warrant, all between 8:58 p.m. and 9:40 p.m., was not feasible. The Court observes that the property inventory [Exh. 3] lists Detective Allen as one of the officers who seized items from Defendant Rose's apartment. The Court finds that the alternative timeline argued by the Defendant, in which Detective Allen arrived at the scene at 8:58 p.m., conducted a detailed search of the Defendant's apartment, traveled twenty minutes to the City County building, and then obtained a search warrant at 9:40 p.m., is even less feasible.

the search or its timing. The Defendant's Motion to Suppress Evidence [Doc. 66] should be denied.

V. CONCLUSION

After carefully considering the parties' filings and arguments, the evidence, and the relevant legal authorities, the Court finds that law enforcement did not search the Defendant's apartment until Detective Kenneth Allen arrived on the scene with the search warrant. Because the officers properly searched the Defendant's apartment pursuant to a search warrant, the Court finds no basis to suppress the evidence seized in the execution of the search warrant and **RECOMMENDS** that the Defendant's Motion to Suppress Evidence [**Doc. 66**] be **denied**.[7]

Respectfully submitted,

s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[7] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Crim. P. 59(b)(2) (as amended). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); see United States v. Branch, 537 F.3d 582, 587 (6th. Cir. 2008); see also Thomas v. Arn, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the required time period waives the right to appeal the District Court's order). The District Court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370, 1373 (6th Cir. 1987).