UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| ROBERT L. ROSE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Nos. 3:19-CV-057 |
| | )     3:17-CR-041 |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## **MEMORANDUM OPINION**

Before the Court is Robert L. Rose's ("Petitioner's") *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 337].[1] The United States has responded in opposition [Doc. 4]. Petitioner did not file a reply, and the time for doing so has passed. *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see also* [Doc. 3]. Petitioner has also filed a motion for reconsideration (construed as a Rule 59(e) motion) [Doc. 8] and a motion to expand the record [Doc. 12] which are pending before this Court. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 337] will be **DENIED**.

  I.  **BACKGROUND**

---

[1] Document numbers not otherwise specified refer to the civil docket.

In April 2017, Petitioner and nine co-defendants were charged in an eleven-count indictment pertaining to conspiracy, possession and distribution of 50 grams or more of methamphetamine, its salts, isomers, and salts of its isomers, a Schedule II controlled substance along with related gun charges. [Crim. Doc. 3]. Petitioner was named in three counts. [*See id*.].

On October 20, 2017, Petitioner entered into a plea agreement with the government. [Crim. Doc. 146]. Petitioner agreed to plead guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) and one count of possession of firearms in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). [*See id*.] The plea agreement was signed by Petitioner and attorney Michael B. Menefee.

In his plea agreement, Petitioner acknowledged that between January 2014 and April 2017 in the Eastern District of Tennessee, Petitioner knowingly, intentionally, and without authority, conspired with at least one other person to distribute at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine, a Schedule II controlled substance. Petitioner also possessed firearms, namely a Glock 9mm handgun, a Hi-Point 45 caliber handgun, a SCCY 9mm handgun, and a US small revolver, in furtherance of his drug trafficking activities. During the conspiracy, Petitioner obtained kilogram quantities of methamphetamine from co-conspirators in Georgia, which Petitioner then resold in the Knoxville area of the Eastern District of Tennessee. Petitioner stored kilogram quantities of methamphetamine at co-defendant's residence for future distribution and distributed methamphetamine to numerous customers, including other co-defendants. On July 8, 2014,

Troopers with the Tennessee Highway Patrol stopped Petitioner's vehicle traveling southbound on I-75 for a traffic violation. Petitioner was nervous and did not know his travel itinerary, but he consented to a search of his vehicle where troopers located approximately $23,200 in a suitcase in the back seat. Troopers also seized a drug ledger, showing figures of 23,000 and notes converting grams to ounces, ounces to kilograms, and grams to kilograms. A search warrant was obtained for Petitioner's cell phone and the information obtained from that warrant showed numerous contacts between Petitioner and co-defendants including drug related text messages. Petitioner admitted that he was traveling to Georgia to purchase approximately one kilogram (or two pounds) of methamphetamine with the money and that he was going to return to Tennessee to distribute that methamphetamine.

On March 7, 2016, a confidential informant, working with law enforcement, purchased 26.93 grams of methamphetamine from Petitioner at his residence. The Drug Enforcement Administration ("DEA") laboratory analysis confirmed 26.93 grams of actual methamphetamine with a purity of 98%. 25. On March 7, 2016, the Knox County Sheriff's Office executed a state search warrant at Petitioner's residence. During the search, in a safe in Petitioner's bedroom, officers located approximately one kilogram of methamphetamine, 26 grams of cocaine, $18,260 in U.S. currency, and four handguns, a Glock 9mm handgun, Serial Number RLD778, a Hi-Point 45 caliber handgun, Serial Number X467659, a SCCY 9mm handgun Serial Number 132054, and a US small revolver, Serial Number 28182, and miscellaneous ammunition. Agents also located small quantities of cocaine and marijuana. The DEA analysis confirmed 1,020 grams of actual

3

methamphetamine with a purity of 99%. Petitioner admitted to conspiring to distribute at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine and to possessing firearms in furtherance of his drug trafficking.

The Court conducted a change of plea hearing on October 31, 2017. At the hearing, the Court informed Petitioner of his rights, confirmed that Petitioner wished to plead guilty, determined that Petitioner was competent to plead guilty, confirmed that Petitioner understood the elements of the offense and had been advised of them by his attorney, confirmed that Petitioner thought his attorney knew everything about the case, confirmed that Petitioner knew the rights he was giving up by pleading guilty, and that the Court would decide his sentence after the presentence report which could be enhanced or different from the guideline range. [Crim. Doc. 316].

The PSR calculated a total offense level of 41 and a criminal history category of II, resulting in a guideline range of 360 months to Life. [Crim. Doc. 294, ¶ 82]. Because Count 8 required the sentence to run consecutive to any other count and the mandatory minimum sentence for it was 5 years, the effective guideline range was 420 months to Life. [*Id*.].

The government filed a notice of no objections to the PSR. [Crim. Doc. 295]. The government also filed a sentencing memorandum wherein it concurred that the correct advisory guideline calculation was 420 months to Life imprisonment and stated that motion for downward departure would not be filed as Petitioner did not provide substantial assistance. [Crim Doc. 306].

Petitioner, through counsel, filed objections to the PSR, objecting to 1) the aggravating role adjustment in paragraph 30, 2) that he did not travel to Georgia with co-

defendant to pick up methamphetamine as stated in paragraph 32, 3) the enhancement for obstructing or impeding justice in paragraph 43, 4) the enhancement for maintaining a premises for manufacturing or distributing drugs in paragraph 48, 5) the aggravating role adjustment pursuant to U.S.S.G.§ 3B1.1 in paragraph 50, 6) the obstruction of justice enhancement in paragraph 51, and 7) the stated total offense level in paragraph 56. [Crim. Doc. 303]. Petitioner, through counsel, also filed a sentencing memorandum wherein he provided additional evidence regarding the objections to the PSR and discussed Petitioner's age, history, and health concerns. [Crim. Doc. 307].

On March 13, 2018, the Court determined that the 4-level increase pursuant to U.S.S.G. § 3B1.1(a) did not apply, but a 2-level enhancement under U.S.S.G. § 3B1.1(c) was appropriate. [Crim. Doc. 311]. The Court also determined that there was not enough evidence to support the enhancement for obstruction of justice under U.S.S.G. § 3C1.1 and reduced Petitioner's offense level to 37, resulting in a new guidelines range 295 to 353 months imprisonment. [*Id*.]. The Court sentenced Petitioner to a total of 295 months' imprisonment and then five years of supervised release. [Crim. Doc. 310]. Petitioner, through counsel, filed an appeal on March 20, 2018. [Crim. Doc. 313]. The Court of Appeals affirmed the Court's judgment on August 24, 2018. [Crim. Doc. 32]. On February 14, 2019, Petitioner filed this timely § 2255 motion.

II.     **STANDARD OF REVIEW**

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct his judgment of conviction and sentence if he claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose

5

the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that he is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

6

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255 Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

## III. ANALYSIS

As an initial matter, Petitioner claims to raise eight claims in his § 2255 motion. Petitioner raises one claim that his plea was not made knowingly or voluntarily and seven claims for ineffective assistance of counsel: 1) counsel was ineffective related to plea negotiations and written plea agreement, 2) counsel did not inadequately investigate and prepare for criminal case, 3) counsel failed to interview and call material/favorable witnesses at suppression hearing and sentencing, 4) counsel provided erroneous legal advice/information material to Petitioner's decision process, 5) counsel failed to provide adequate legal advice and assistance during the presentence report/investigation and sentencing proceedings, 6) counsel failed to provide necessary legal advice and knowledge needed to make an informed decision to plead guilty to 18 U.S.C. § 924(c) charge, and 7)

7

counsel failed to provide adequate legal advice and properly seek plea negotiations with prosecution. [Doc. 1; Crim. Doc. 337]; *see also* [Doc. 8]. The Court will first address Petitioner's non-dispositive motions [Docs. 8 & 12] before addressing Petitioner's § 2255 claims.

### A. Rule 59(e) Motion [Doc. 8]

The Court will first address Petitioner's objections to the Court's prior rulings denying his request for counsel and an evidentiary hearing [Doc. 7] and his motion for discovery [Doc. 6]. [Doc. 9, pp. 1-8]. Petitioner's objection was filed within 28 days of the Court's order, well within Rule 59(e)'s 28-day time limit; therefore, the Court considers the objection to be a motion to alter or amend under Rule 59(e) of the Federal Rules of Civil Procedure.[2] *In re Greektown Holdings, LLC*, 728 F.3d 567, 574 (6th Cir. 2013) (explaining that a motion to reconsider "that is filed within 28 days can be construed as a motion to alter or amend the judgment under Rule 59(e)"); *Williams v. Thaler*, 602 F.3d 291, 303-304 (5th Cir. 2010) (explaining that "[w]hen a litigant files a motion seeking a change in judgment, courts typically determine the appropriate motion based on whether the litigant filed the motion within Rule 59(e)'s time limit").

A Rule 59(e) motion should only be granted if there was (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice. *Michigan Flyer LLC v. Wayne Cnty. Airport Auth.*,

---

[2] The Federal Rules of Civil Procedure apply in § 2255 cases, to the extent that they are not inconsistent with the Rules Governing Section 2255 Proceedings for the United States District Courts or statutory law. *See* Rule 12, Rules Governing Section 2255 Cases.

860 F.3d 425, 431 (6th Cir. 2017). Although Rule 59(e) permits a court to alter or amend a judgment, it "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n 5 (2008) (citation omitted). Where a movant merely "views the law in a light contrary to that of this Court," his "proper recourse" is not by way of a motion for reconsideration "but appeal to the Sixth Circuit." *McConocha v. Blue Cross and Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *Dana Corp. v. United States*, 764 F. Supp. 482, 489 (N.D. Ohio 1991)).

"The grant or denial of a Rule 59(e) motion is within the informed discretion of the district court, reversible only for abuse." *Betts v. Costco Wholesale Corp.*, 558 F.3d 461, 467 (6th Cir. 2009) (citation omitted). In exercising this discretion, the Court must balance the need for finality with the need to render just decisions. *Day v. Krystal Co.*, 241 F.R.D. 474, 476 (E.D. Tenn. 2007); *see also GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). Finally, the Court's discretion to grant relief must be used sparingly, as revising a final judgment is an extraordinary remedy. *Ira Green, Inc. v. Military Sales & Serv. Co.*, 775 F.3d 12, 28 (1st Cir. 2014).

The arguments offered in Petitioner's Rule 59(e)'s motion are similar to the arguments made in his initial motions. [Doc. 9]. Petitioner's Rule 59(e) motion does not establish a clear error of law, newly discovered evidence, an intervening change in law, or any manifest injustice. Indeed, as the Court reads Petitioner's Rule 59(e) motion, he is seeking to relitigate the arguments he offered in his original motions. Rule 59(e) is not

9

to be used for this purpose. As it is, nothing in Plaintiff's motion, including his attempt to relitigate the issues addressed in the Court's order suggests that he is entitled to relief under Rule 59(e). Further, as discussed below, Petitioner's claims are frivolous and he is not entitled to relief. Accordingly, Petitioner's Rule 59(e) motion (as construed) [Doc. 8] will be **DENIED**.

### B. Motion to Expand Record [Doc. 12].

Also pending before the Court is Petitioner's motion to expand the record with affidavits from his girlfriend and her father. As these affidavits relate to Petitioner's § 2255 claims, the motion [Doc. 12] is **GRANTED**.

### C. Ineffective Assistance of Counsel Claims

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel

10

that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

In its response, the United States grouped Petitioner's ineffective assistance claims together based on when the alleged claim occurred. The Court will do the same.

  a. ***Representation Pre-plea***

Petitioner raises two instances of alleged ineffective assistance during the pre-plea stage: that counsel did not inadequately investigate and prepare for his criminal case, and that counsel failed to interview and call material/favorable witnesses at the suppression hearing and sentencing. !

Petitioner's arguments fail at *Strickland's* second step. Petitioner first makes a conclusory statement that his attorney did not properly investigate or research case law

11

related to the facts [Doc. 1, p. 5]. Petitioner does not state which facts his counsel did not investigate, nor does he provide any case law that could have affected the outcome of his case. As Petitioner has not provided specific facts to support his conclusory allegations, the Court can reject this contention as insufficient to sustain the motion. *See Ushery v. United States*, No. 20-5292, 2020 U.S. App. LEXIS 21840, at *3–4 (6th Cir. July 14, 2020). Accordingly, Petitioner is not entitled to relief for this claim.

Petitioner next states that counsel failed to call favorable witnesses at his suppression hearing. In his motion to expand the record [Doc. 12] (granted *supra*), Petitioner attached two affidavits from potential witnesses regarding their willingness to testify at the suppression hearing and what they would have said. Both affidavits indicate that the witnesses would have testified that the search occurred "before the officers said it did" but neither state an exact time the search occurred. [Doc. 12]. However, the testimony of the witnesses would have been cumulative evidence as counsel established the time discrepancies on the reports during cross-examination and argued that the search occurred before the search warrant at the suppression hearing and in the filed objection to the Report and Recommendation. [*See* Crim. Docs. 120, 121, & 318]. Petitioner has not shown that counsel's decision not to call witnesses whose testimony would likely have amounted to cumulative evidence and was not exculpatory was an unreasonable decision which prejudiced Petitioner.[3] *Strickland*, 466 U.S. at 687; *see also Millender v. Adams,* 376 F.3d

---

[3] This also applies to Petitioner's claim regarding failure to call witnesses at the sentencing hearing. The affidavits indicate that the witnesses would have stated that the house where the drugs were found was primarily a family residence. Petitioner's counsel filed an objection to the enhancement

12

520, 527 (6th Cir.2004) ("A defense counsel has no obligation to call or even interview a witness whose testimony would not have exculpated the defendant." (citations omitted)); *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995) (holding that failure to supply cumulative evidence is not ineffective assistance of counsel). Accordingly, Petitioner is not entitled to relief for this claim.

### b. *Representation During the Plea Process*

Petitioner raises four instances of alleged ineffective assistance during the plea process: that counsel was ineffective related to plea negotiations and written plea agreement, that counsel provided erroneous legal advice material to Petitioner's decision making process, that counsel failed to provide necessary legal advice and knowledge needed to make an informed decision to plead guilty to 18 U.S.C. § 924(c) charge, and that counsel failed to provide adequate legal advice and properly seek plea negotiations with prosecution.

"A guilty plea is open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)). As noted, in the guilty-plea context, the Supreme Court employs the same two-part standard for ineffectiveness that was developed in *Strickland*. *See Hill*, 474 U.S. at 58-59. That is, a petitioner must demonstrate that (1) his attorney's performance was outside the range of competence demanded of attorneys in the criminal context, and (2) the professionally

---

for maintaining a drug premises and argued the same before the Court at sentencing. [*See* Crim. Docs. 303 & 317].

13

unreasonable performance prejudiced him. To show prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

Here, Petitioner has not shown that he was prejudiced by any alleged ineffectiveness of counsel in informing Petitioner of the waivers in the plea agreement. Petitioner also asserts that his counsel was ineffective for providing erroneous legal advice material to Petitioner's decision making process. Petitioner makes contradictory claims about whether he would have gone to trial but for counsel's mis-advice.[4]

Petitioner alleges that his counsel told him he could "plead guilty and preserve the right to appeal the suppression motion ruling" but failed to explain "the Sentencing Guideline's enhancements and adjustments that would apply to [Petitioner's] criminal case" and refuted "any advisements that [Petitioner's] potential prison sentence would be anything less than 240 months of incarceration…" [Doc. 1, p.7]. "[E]ven if counsel gives a defendant erroneous information, a defendant is not entitled to relief if the misinformation is 'directly refuted on the record'" during the plea colloquy. *Cadavid-Yepes v. United States*, 635 F. App'x 291, 299 (6th Cir. 2016) (quoting *United States v. Todaro*, 982 F.2d 1025, 1029 (6th Cir. 1993)). A proper plea colloquy, as was held in this case, "cure[s] any

---

[4] Petitioner claims he would have gone to trial had counsel properly explained the waivers and sentencing guidelines in the plea agreement. [Doc. 1, pp. 5-6]. However, he later also faults his counsel for not seeking plea negotiations with the Government, "finds it incredulous that the AUSA never did make any plea-offer," and states that he "most probably could have agreed to negotiate with the prosecution and resolved the case without getting what is essentially a life term of imprisonment." [*Id*. at 12-13].

14

misunderstanding [a defendant] may have had about the consequences of his plea." *Id*. at 299–300 (*quoting Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). At his change of plea hearing, the Court advised Petitioner of the rights he was giving up by pleading guilty, specifically discussing his right to appeal or file § 2255 motions. [Crim. Doc. 316, pp. 20-21].

The Court also advised Petitioner about the sentencing guidelines, that enhancements may be applicable, and that the Court would determine Petitioner's sentence after the presentence report had been completed. [*Id*. at 19-20]. Petitioner stated on the record that he had discussed the guidelines and sentencing with his attorney and that he understood what rights he was giving up by pleading guilty. [*Id*.]. As the Supreme Court has stated, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Accordingly, Petitioner is not entitled to relief for these claims.

Petitioner claims that his counsel was ineffective for not informing him of the elements of an 18 U.S.C. § 924(c) charge and alleges that he would not have pleaded guilty had he known the United States had to prove that Petitioner used the guns in furtherance of his drug offenses. Petitioner seems to assert that the United States did not carry its burden of proof regarding this offence. However, Petitioner seems to forget that he pleaded guilty to this offense, relieving the United States of its burden of proof as the Court expressly stated at his change of plea hearing, to which Petitioner stated he understood. [Crim. Doc.

15

316, p. 11]. "A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Boce*, 488 U.S. 563, 569 (1989).

Further, Petitioner has not shown that counsel ineffective for advising Petitioner that the Government could prove the elements of this offense, as the facts show that several guns were found in the same bedroom as a safe with methamphetamine. A § 924(c) conviction is appropriate if "the firearm [is] strategically located so that it is quickly and easily available for use." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001) (finding sufficient evidence where "an illegally possessed, loaded, short-barreled shotgun [was found] in the living room of the crack house, easily accessible to the defendant and located near the scales and razor blades" and the defendant was near the gun while he possessed cocaine and a large sum of cash."). Accordingly, Petitioner is not entitled to relief for this claim.

Petitioner also claims his attorney was ineffective for not seeking out or negotiating a better plea deal. While Petitioner may believe that his counsel was constitutionally ineffective because he now thinks he could have secured a better deal if only his attorney had been a better negotiator, the law is well-settled that dissatisfaction with a plea deal does not rise to a showing of constitutionally ineffective counsel. *See,* e.g., *Hunter*, 160 F.3d at 1115 ("[W]hile [petitioner] may later have decided that he could have done better, his dissatisfaction does not rise to a showing of constitutionally ineffective counsel"); *United States v. Parker*, 609 F.3d 891, 895 (7th Cir. 2010) ("[W]hether a petitioner 'could have negotiated a better plea deal is irrelevant in the ineffective assistance context.'") (quoting

16

*Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006)). Additionally, a criminal defendant has "no constitutional right to plea bargain." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). The government was therefore under no obligation to offer any plea deal, let alone a more lenient one. Accordingly, Petitioner is not entitled to relief for this claim.

### c. *Representation During Sentencing*

Petitioner alleges that his counsel "essentially abandoned" him and failed to adequately represent him during the PSR investigation and the sentencing proceedings. [Doc. 1, p. 8]. This statement is directly contradicted by the record and is not credited. *Blackledge*, 431 U.S. at 74.

Petitioner alleges that his counsel failed to "lodge appropriate and meaningful objections to the PSR." [Doc. 1, p. 9]. However, Petitioner's counsel did file objections to the PSR, objecting to all four of the enhancements in the PSR. [Crim. Doc. 303]. Petitioner's counsel cannot be deemed ineffective for doing precisely what Petitioner now claims he should have done. Petitioner has also not established prejudice as counsel is not required to raise frivolous defenses or arguments. *Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003). Further, the Sixth Circuit Court of Appeals reviewed Petitioner's sentence *de novo* and determined that his sentence was procedurally and substantively reasonable. [Crim. Doc. 329]. Accordingly, Petitioner is not entitled to relief for this claim.

Based on the reasons above, all of Petitioner's ineffective assistance claims will be **DENIED** as the record directly contradicts Petitioner's claims, Petitioner has not shown that his counsel was ineffective, and Petitioner has not shown that he was prejudiced by any alleged ineffectiveness of counsel.

### D. Knowing and Voluntary Plea Claim

Petitioner also claims that his plea was not knowing or voluntary because of counsel's ineffective assistance. As discussed above, Petitioner's counsel was not ineffective. Further, as the Supreme Court has explained, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. In open court, Petitioner stated that he was satisfied with his attorney's representation of him, that he understood that he was giving up some of his constitutional rights by pleading guilty, that he was pleading guilty because he was guilty, that the facts as laid out by the government were accurate, and that he was not coerced or threatened to plead guilty. [Crim. Doc. 316]. After questioning Petitioner and observing him, the Court found that Petitioner's guilty plea was made voluntarily and knowingly, and that Petitioner fully understand the rights he was giving up and the nature and charges of the offense. [*Id*.].

The Sixth Circuit Court of Appeals also determine that Petitioner's guilty plea was voluntary. After a *de novo* review of the record, the Court of Appeals concluded, "[t]he record establishes that the district court complied with the requirements of Rule 11 and properly determined that Rose knowingly and voluntarily entered his guilty plea." [Crim. Doc. 329].

Accordingly, Petitioner's claim will be **DENIED**.

### IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 337] will be **DENIED** and **DISMISSED**. Petitioner's Rule 59(e) motion, as construed, [Doc. 8] will be **DENIED**. Petitioner's motion to expand the record [Doc. 12] will be **GRANTED**.

V.   CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claims under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

   **IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge